# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CHINYERE U. NWOKE, ) | |
| ) | |
| Plaintiff, ) | No. 17-cv-00140 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| THE CONSULATE OF NIGERIA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This case arises from Plaintiff Chinyere U. Nwoke's unsuccessful attempt to secure passports for herself and her son from the Consulate of Nigeria. R. 1, Compl. ¶ 4.[1] Nwoke filed this lawsuit (on her own, without a lawyer) against the Consulate alleging breach of contract and civil theft.[2] *Id.* The Consulate now moves to dismiss, arguing that this Court lacks personal jurisdiction and subject matter jurisdiction, and (alternatively) that Nigeria is a more convenient forum. *See* R. 35, Decl. of Ike Agwuegbo in Supp. of Mot. to Dismiss ¶¶ 4-5, 10-11; R. 35, Mem. in Supp. of Def.'s Mot. to Dismiss at 15-20. For the reasons discussed below, the Consulate's motion is granted and the case is dismissed with prejudice.

## I. Background

For purposes of deciding the pending motions, the Court accepts Nwoke's factual allegations as true. In early February 2016, Nwoke sent two money orders to

---

[1]Citations to the record filings are "R." followed by the docket number and, when necessary, a page or paragraph number.
[2]Initially, Nwoke also named two individuals as defendants, but they were later dismissed from the case. R. 31, July 7, 2017 Minute Entry.

the Consulate of Nigeria in New York, totaling $412.00 for two passports (one for her son and one for herself). Compl. ¶¶ 4-10. Consulate employees then traveled to Chicago to process passport applications for Chicago-area residents, including Nwoke and her son. *Id.* ¶¶ 3, 10, 13. The employees took their fingerprints and took photos for the passports. *Id.* ¶ 11. Nwoke gave the employees two stamped self-addressed envelopes for mailing the passports back. *Id.* ¶ 12. Later, Nwoke repeatedly attempted to contact the Consulate to find out the status of her passports but received no response. *Id.* ¶¶ 14-15.

Because the passports have not yet been received, Nwoke brought this lawsuit for breach of contract and civil theft. *Id.* ¶ 16. Nwoke requests money damages or injunctive relief, and court costs. *Id.* p. 4. The Consulate filed a motion to dismiss for lack personal jurisdiction, subject matter jurisdiction, and forum non conveniens. *See* Decl. of Ike Agwuegbo in Supp. of Mot. to Dismiss ¶¶ 4-5, 10-11; Mem. in Supp. of Def.'s Mot. to Dismiss at 15-20.

## II. Standard of Review

A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint. *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th. Cir. 2017). If there are no factual disputes, then the Court accepts the allegations in the complaint as true, and draws all reasonable inferences in the plaintiff's favor. *See Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). Having said that, "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing

that the jurisdictional requirements have been met." *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014).

### III. Analysis

### A. Service of Process

The Consulate argues that service was not properly effectuated according to the requirements of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq*. The Foreign Sovereign Immunities Act contains special requirements for service of process on foreign states and their political subdivisions. 28 U.S.C. § 1608(a). The Consulate argues that, as the official representative of Nigeria in the United States, the Consulate is a foreign state. Nwoke does not contest that point. Indeed, a consulate is not an entity with a separate legal existence from its nation, and is instead the foreign state itself, so service must be made under § 1608(a). *See Gray v. Permanent Mission of People's Republic of Congo to United Nations*, 443 F.Supp. 816, 820 (S.D.N.Y. 1978).

Specifically, the FSIA requires service on a foreign state to be made in one of four ways—in fact, the statute goes so far as to dictate that the four ways have to be considered in a particular sequence. First, service can be made in accordance with a "special arrangement" between a plaintiff and a defendant. 28 U.S.C. § 1608(a)(1). Although Nwoke seems to assert that she had a special arrangement with the Consulate, she provides no support for this assertion (which is just a conclusion, not a set of facts). *See* R. 21, Pl. Supp. Mot. for Default J. ¶ 10. Because there is no

3

evidence or allegation that the contract or any other communication provided for a special arrangement for service of process, § 1608(a)(1) does not apply.

Second, if no special arrangement exists, then service can be made "in accordance with an applicable international convention." 28 U.S.C. § 1608(a)(2). Nwoke points to the Hague Service Convention for service of process as a qualifying treaty. Pl. Supp. Mot. for Default J. ¶ 11. But in fact Nigeria is not a signatory to the Hague Convention. *See* HCCH, *HCCH Members*, https://www.hcch.net/en/states/hcch-members (last visited Feb. 26, 2018). Nor is Nigeria a signatory to the other multilateral treaty on service of process that the United States has signed, the Inter-American Convention on Letters Rogatory. *See* Organization of American States, *B-36: Inter-American Convention on Letters Rogatory*, oas.org, http://www.oas.org/juridico/english/treaties/b-36.html (last visited Feb. 26, 2018). So there is no applicable international convention, and § 1608(a)(2) does not apply to this case either.

Third, if there is no applicable international convention, then service can be made by sending a copy of the summons, complaint, and notice of suit by mail requiring signed receipt, through the "clerk of the court to the head of the ministry of foreign affairs of the foreign state." 28 U.S.C. § 1608(a)(3). Nwoke did not invoke this provision. Instead, she attempted to effectuate service on the Consulate through a private process server, via in-person delivery. Pl. Supp. Mot. for Default J. ¶ 2; R. 11, Affidavit of Service Regarding Summons/Complaint Served on the Consulate of Nigeria, NY. The process server apparently served an "agent" of the

4

Consulate, who refused to give his name, at the Consulate's address in New York. R. 11, Affidavit of Service. This plainly does not qualify as mailed notice to Nigeria's ministry of foreign affairs through the clerk, which is what § 1608(a)(3) requires.

Lastly, the fourth method is service through the United States Secretary of State, but that only applies if "service cannot be made within 30 days under paragraph (3)." 28 U.S.C. § 1608(a)(4). Because service was not attempted under paragraph (3), this method does not apply here. At the end of the day, service was not properly made under any of the four methods identified in the statute.[3]

It might be possible to give Nwoke another chance to effectuate service of process, and her *pro se* status does counsel in favor of flexibility. But she had almost eight months to effectuate service (before the Consulate filed the dismissal motion), and the Court twice pointed out the availability of the Pro Se Help Desk. R. 13, 24. So, at this point, even if Nwoke had asked for another shot at service, unfortunately the Court would not have granted it. And it would be fruitless anyway. As explained next, this Court does not have subject matter jurisdiction.

---

[3]It is worth noting that some courts are willing to forgo strict compliance with the service methods dictated by § 1608. For example, some hold that substantial compliance is all that is required. *See, e.g.*, *Sherer v. Construcciones Aeronauticas, S.A.*, 987 F.2d 1246, 1250 (6th Cir. 1996) (holding substantial compliance is sufficient for compliance with FSIA); *Velidor v. L/P/G Benghazi*, 653 F.2d 812, 821 (3d Cir. 1981) (same); *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1129 (9th Cir. 2010) (same). Other courts require strict compliance with § 1608. *See, e.g.*, *Magness v. Russian Federation*, 247 F.3d 609, 615 (5th Cir. 2001); *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 28-29 (D.C. Cir. 2015). The Seventh Circuit does not appear to have explicitly decided this issue. *See Wyatt v. Syrian Arab Republic*, 800 F.3d 331, 342 n.5 (7th Cir 2015) (noting the split), *overruled on other grounds*, *Rubin v. Islamic Republic of Iran*, 830 F.3d 470 (7th Cir. 2016), *aff'd,* — U.S. —, 2018 WL 987348 (Feb. 21, 2018). In any event, Nwoke does not ask the Court to weigh in on the substantial compliance debate; her only argument is that service was properly made. It was not, so the Court lacks personal jurisdiction over the defendant.

5

## B. Subject Matter Jurisdiction

District courts have subject matter jurisdiction over "any nonjury civil action against a foreign state" *if* the foreign state is not entitled to immunity under the statute (or any applicable international agreement). 28 U.S.C. § 1330(a). Under FSIA's burden-shifting framework, the party asserting immunity bears the initial burden of establishing that it satisfies FSIA's definition of a foreign state. *See Enahoro v. Abubakar*, 408 F.3d 877, 882 (7th Cir. 2005). If this burden is met, then the foreign state is presumed to have immunity unless an exception applies. *See id.*

As noted earlier, both parties assume, and neither contests, that the Consulate is a foreign state. So the Consulate of Nigeria enjoys sovereign immunity unless one of the listed exceptions applies. There are really only two exceptions that can possibly apply here. The first is the "commercial activity" exception: if Nigeria was just engaged in commercial activity, then immunity is inapplicable. 28 U.S.C. § 1605(a)(2). The test for commercial activity is whether the government is acting as "a regulator of the market" or a "private player within it." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). The inquiry is objective; that is, the question is simply whether private parties engage in the *type* of conduct at issue. *See id.* The nation's *motive* for engaging in the conduct is irrelevant. *See id.*

Here, the Consulate was engaged in a paradigmatic sovereign act: the processing of applications for passports. Private parties cannot issue passports. To be sure, Nwoke's brief insinuates that the Nigerian Consulate had a profit motive

for processing the passport applications,[4] but the motive for issuing (or not issuing) a passport is irrelevant for § 1605(a)(2) purposes. *See Weltover*, 504 U.S. at 616. In *Weltover*, the Supreme Court had the converse situation: a foreign state's motive for engaging in a commercial activity could not transform the commercial activity into a sovereign act. In that case, Argentina issued bonds to raise funds, just as private companies regularly issue bonds to refinance debt. *See id.* at 616. The Supreme Court deemed it irrelevant that Argentina sold the bonds in order to stabilize the bond market rather than to make a profit, and held that Argentina could be sued because the commercial activity exception applied. *Id.* at 614, 617. The reverse is true too: even if the Consulate has a profit motive for processing the passport applications, the act itself remains a *sovereign* act of regulation—as opposed to the type of activity that a private party could conduct. So the commercial activity exception does not apply.

Next, Nwoke argues that the FSIA's "tortious act" exception applies. 28 U.S.C. § 1605(a)(5). To the extent that Nwoke brings a breach of contract claim, that claim does not comprise a tort, so it does not fall within the exception. *See, e.g.*, *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012) (distinguishing between contract and tort for personal jurisdiction analysis); *Snap-On Inc. v. Ortiz*, 1999 WL 592194, at *20 (N.D. Ill. Aug. 3, 1999) ("Mere breach of contract is not a tort."); *Bloomington Partners, LLC v. City of Bloomington*, 2005 WL 3536340, at *9 (N.D. Ill. Dec. 23, 2005) (same). To the extent that Nwoke asserts a fraud or civil-theft

---

[4]*See* R. 38, Pl. Resp. ¶¶ 8-9, 12.

claim, those claims do qualify as torts. But that is not the end of the analysis because the tortious activity exception itself has two exceptions that apply to Nwoke's claims.

First, the tortious activity exception does not apply to, among other things, suits arising out of the performance or failure to perform "a discretionary function regardless of whether the discretion be abused." 28 U.S.C. § 1605(a)(5)(A). Because this provision of FSIA is modeled on a similar exception to jurisdiction under the Federal Tort Claims Act (FTCA), courts generally look to FTCA cases to determine whether an act qualifies as "discretionary." *See, e.g., Joseph v. Office of Consulate General of Nigeria*, 830 F.2d 1018, 1026 (9th Cir. 1987). The Supreme Court has stated that Congress's purpose for creating the discretionary function exception in the FTCA was to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). Congress wished to take "steps to protect the Government from liability that would seriously handicap efficient government operations." *Id.* (quoting *United States v. Muniz*, 374 U.S. 150, 163 (1963)). In order for a governmental act to qualify for the discretionary function exception, it must (1) involve "an element of judgment or choice"; and (2) the decision or action "must be based on considerations of public policy." *Lipsey v. United States*, 879 F.3d 249, 254 (7th Cir. 2018).

Reviewing a foreign country's decision on whether to issue a passport is precisely the kind of judicial second-guessing of a governmental act that this exception was meant to prevent. Nwoke does not point to any Nigerian statute that eliminates Nigeria's judgment in deciding to issue a passport, and the decision to issue a passport is infused with foreign policy and national security considerations, *cf. Haig v. Agee*, 453 U.S. 280, 307-308 (1981) (holding that the State Department had valid public policy reasons for revoking a passport). The discretionary nature of the processing of a passport application takes Nwoke's claim outside of the tortious activity exception.

The second carve-out to the tortious activity exception also preserves Nigeria's immunity. The tortious activity exception does not apply to, as pertinent here, "misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 1605(a)(5)(B). If Nwoke is arguing that the Consulate was engaged in outright fraud, as her brief implies,[5] then that claim would also fall outside of the tortious activity exception because fraud involves misrepresentation and deceit. *See Ombegu v. United States*, 475 Fed. Appx. 628, 628 (7th Cir. Apr. 12, 2012) (non-precedential disposition) (in FTCA case, holding that fraud claim was barred because it is a claim for "misrepresentation" and "deceit"); *Huynh v. Massenya*, 2017 WL 2377831, at *4 (D. Md. 2017) (in deciding FSIA immunity, holding that "fraud by definition requires misrepresentation or deceit"). So this second exception too takes Nwoke's

---

[5]In her response brief, Nwoke contends that the Consulate "uses 'lost' passport false alarms to scam consumers." Pl.'s Resp. ¶ 8(c). Ordinarily, allegations in a response brief do not comprise a valid amendment to a complaint, *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996), but it does not matter here because a fraud claim runs into the obstacle of sovereign immunity.

9

fraud claim outside of the tortious activity exception. No other exception applies, so the Consulate is entitled to sovereign immunity and this Court has no subject matter jurisdiction over this case.[6]

### IV. Conclusion

For the reasons given above, the Consulate's motion to dismiss for lack of personal jurisdiction and lack of subject matter jurisdiction is granted. There is no reason to grant leave to amend the complaint in light of the impossibility that Nwoke could overcome the problem of sovereign immunity, so final judgment will be entered. The status hearing of March 22, 2018 is vacated.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: February 27, 2018

---

[6] In light of the personal jurisdiction and subject matter jurisdiction flaws, there is no need to address the Consulate's argument that Nigeria is the more convenient forum.